# COMMONWEALTH of Pennsylvania, Appellee

## v.

## Joshua DEMSHOCK, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 19, 2003.
Filed July 8, 2004.

---

Tamara M. Cozzi, York, for appellant.

Sandra I. Thompson, Asst. Dist. Atty., York, for Com., appellee.

Before: TODD, BENDER and BECK, JJ.

BENDER, J.

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted of possession of marijuana and underage drinking. Appellant raises a single issue, did the suppression court err in denying Appellant's motion to suppress. We vacate and remand.

¶ 2 On March 29, 2002, at approximately 9:30 p.m., in response to complaints of automobile theft and vandalism in the vicinity of the Towne and Country Apartments in York Township, York County, Detective Donald E. Hopple of the York Area Regional Police Department was patrolling the apartments in an attempt to interdict any additional theft or vandalism of automobiles. As Detective Hopple proceeded down a walkway between two apartment buildings he observed, through an approximately one-foot opening in a vertical blind housed inside a sliding glass door, individuals that he believed to be teenagers consuming beer. Spurred by this observation, Detective Hopple called for additional police officers, some of whom were positioned at the rear of the apartment upon arriving. N.T. Suppression Hearing, 2/24/2003, at 6.[1]

¶ 3 As soon as back-up was in place, Detective Hopple, who had been joined by Officers Steven Sanders and William Thoman at the door to the apartment, knocked on the door while covering the peephole. In response to the knock, one of the occupants asked "who was there" from behind the door. Detective Hopple replied, "[h]ey man, it is me." Id. at 10. The person behind the door, Richard Stough, opened the door part way and peered out. After seeing the police officers the young man backed away from the door after which the officers proceeded through the doorway, pushing the door open as they entered the apartment. Id. at 13, 15. According to the police officers, an odor of burnt marijuana was clearly detectable after the door was opened.

¶ 4 Once inside the apartment, the officers were able to observe marijuana on a

---

1. Detective Hopple's exact testimony was: "Well, myself and Officer Sanders just kind of stood back and we called for some units. Generally, in a case like that, a lot of times kids tend to scatter. So, we got additional units to stand in the back while we went to the door and knocked."

coffee table in plain view which was then seized. Detective Hopple and Officer Sanders began taking identification information from the teenagers. In response to observing the marijuana on the table, Officer Thoman told the teenagers that if anyone had marijuana on them, they might as well place it on the table. *Id.* at 8. In response to this comment, Appellant, who had a bag of marijuana in his pocket, reached into his pocket and threw the bag on the table. *Id.*

¶ 5 Appellant was arrested and charged with possession of marijuana and underage drinking. Prior to trial, Appellant filed a motion to suppress, which was heard on February 24, 2003. Appellant's motion was denied, following which Appellant waived his right to a jury trial and the case was submitted to the trial court based upon the testimony taken at the suppression hearing. Appellant was found guilty of the two offenses and was immediately sentenced to a fine of $100.00 on the underage drinking charge and to a period of thirty days reporting probation on the marijuana possession charge. This timely appeal followed.

¶ 6 Without question, the reported decision most relevant to the instant case, and the decision that most influences our decision today, is *Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269 (1994). In *Roland*, police officers responded to a call of an assault upon a nineteen year-old male. The teen was bleeding about the head when police officers arrived. The teen told the police that he had been assaulted while at a party at Roland's home and that there was underage drinking and marijuana use at the party. The police proceeded to the apartment and knocked on the door. When the door was opened, the police observed several minors in close proximity to open cans of beer which the teens then attempted to shield from view. Believing

that they had seen evidence of underage drinking, the police officers entered the apartment and conducted a search. In addition to numerous beer cans, police found marijuana. Roland was then placed under arrest after which he admitted that he furnished alcohol to minors. Prior to trial, Roland filed a motion to suppress which was denied. Upon conviction, Roland took an appeal, which led to an affirmance in this Court. However, upon further appeal, the Supreme Court reversed.

¶ 7 In overturning our decision, the Court first recited the applicable law:

In a private home, "searches and seizures without a warrant are presumptively unreasonable ...." *Arizona v. Hicks*, 480 U.S. 321, 327, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 355 (1987). Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 583–90, 100 S.Ct. 1371, 1378–82, 63 L.Ed.2d 639, 648–53 (1980). In determining whether exigent circumstances exist, a number of factors are to be considered. As stated in *Commonwealth v. Wagner*, 486 Pa. 548, 557, 406 A.2d 1026, 1031 (1979),

Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in deter-

mining whether the warrantless intrusion was justified.

Accord *Commonwealth v. Williams,* 483 Pa. 293, 298–99, 396 A.2d 1177, 1179–80 (1978), cert. denied, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. See *Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85, 95 (1990). Nevertheless, "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin,* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 743 (1984).

Where an offense being investigated by police is a minor one, a balancing of the foregoing factors should be weighted against finding that exigent circumstances exist. *Welsh v. Wisconsin,* 466 U.S. at 750–53, 104 S.Ct. at 2098–99, 80 L.Ed.2d at 743–45 (1984). See also *Commonwealth v. Williams,* 483 Pa. at 298, 396 A.2d at 1179 (where no grave offense is involved, particularly a crime of violence, the justification for proceeding without a warrant is more likely absent).

*Roland,* 637 A.2d at 270–71. The Court then applied the law to the facts of the case and stated:

Applying these considerations to the present case, we regard the entry by police into appellant's home as improper. Clearly, the police were not in hot pursuit of a fleeing felon. Nor was there a danger to police or other persons that would have necessitated an immediate entry. There was no reason to believe that appellant or the minors were armed. Further, the entry occurred at nighttime, which is a particularly suspect time for searches to be conducted. See *Commonwealth v. Williams,* 483 Pa. at 299, 396 A.2d at 1180 (an entry made at night raises particular concern over its reasonableness); Pa.R.Crim.P. 2003(c).

*Id.* at 271.

¶ 8 Of course, a quick review of the above paragraph reveals that all of these comments are similarly applicable to the present case. The police were not in hot pursuit of a fleeing felon, there was no indication that anyone was in danger, including the police or the partygoers, there was no reason to believe that the occupants of the apartment were armed, and the entry occurred at night. Thus, one might conclude, *Roland* compels us to vacate Appellant's judgment of sentence. The Commonwealth suggests otherwise.

¶ 9 In attempting to distinguish *Roland,* the Commonwealth states that although the police knocked on the door to question occupants about underage drinking, the actual entry into the apartment was prompted by the need to prevent the destruction of drug evidence as opposed to evidence of alcohol use found in *Roland.* Commonwealth's Brief at 11. This is a position echoed by the suppression court. However, this position appears to strike a neutral observer as retroactive justification as there is a complete lack of support on the record for this proposition.

¶ 10 Although given ample opportunity to offer such testimony, Detective Hopple never testified that the purpose of knocking at the door was to merely inquire about underage drinking and that the decision to enter the premises without a warrant was made only upon the smelling of marijuana. Moreover, Detective Hopple's actions belie this interpretation of the events. Rather than knock on the door

and announce their presence, Detective Hopple covered the peephole on the door so that the occupants could not determine their identity. Then Detective Hopple engaged in a subterfuge to get the occupants to open the door. The obvious, and seemingly only, purpose of these actions was to, in effect, catch the teens "red handed." Of course, doing so would require an entry into the premises, an action which, in fact, occurred immediately upon the door's opening. Indeed, there is no indication in the record that a period of hesitation or reflection took place after the door was opened before the police entered the premises.

¶ 11 The Commonwealth's and suppression court's premise is further belied by Detective Hopple's calling for back-up and the positioning of police units in the back of the apartment building. N.T. Suppression Hearing, at 6. Detective Hopple testified that often kids will scatter when the police come to the door so that backup units were situated in the rear to apprehend any fleeing teens. The positioning of back-up units is evidence that the intent of the officers was to cite the teens for underage drinking, not to merely "investigate" potential underage drinking. Of course, to effectuate this goal would have required an entry into the apartment. The record simply does not support the conclusion that the decision to enter the apartment without a warrant was formulated only after the officers smelled marijuana upon the opening of the door.

 ¶ 12 The relevance of the above is that, in our view, the exigency relied upon, that is, the need to secure the prem-

ises to prevent destruction of evidence, was a direct result of the failure to secure a warrant upon observing underage drinking and the choice to gain entry through subterfuge. It is well established that police cannot rely upon exigent circumstances to justify a warrantless entry where the exigency derives from their own actions. *Commonwealth v. Ariondo,* 397 Pa.Super. 364, 580 A.2d 341 (1990). This was not a case where officers stumbled directly upon a crime in progress and had no time to secure a warrant.[2] Here, the officers observed the illegal activity from outside the premises without the occupants detecting their presence. Under these circumstances, the officers could have made efforts to secure a search warrant and quite possibly could have secured a warrant prior to any of the partygoers realizing that the police were outside.

¶ 13 As pointed out in *Roland,* the physical evidence in question, beer bottles, cannot be easily destroyed or disposed of. In all likelihood, to dispose of the bottles it would have been necessary to physically remove the bottles from the apartment in a garbage bag. Had that occurred prior to the securing of a search warrant, the bottles could have been seized outside the residence, or could have been recovered once they had been deposited in a trash receptacle without offending the warrant requirement.

¶ 14 Additionally, had any of the partygoers decided to leave the party prior to the securing of a warrant, they could have been stopped and cited at that point as the police were already in possession of suffi-

---

2. In this respect, the argument for finding exigency is weaker than in *Roland.* In *Roland,* before knocking on the door to investigate, police were only in possession of the youth's assertion that there was underage drinking and marijuana use ongoing. Thus, there was no guarantee that efforts to secure

a warrant would have been successful without additional evidence of illegal activity. In the present case, it is likely that the police officer's direct observations through the sliding glass door would have been sufficient to obtain a warrant.

cient evidence, *i.e.*, the observance of underage drinking, to cite the underage occupants. In short, since the only violation of the law observed by the officers was underage drinking, the officers had no excuse for not securing a search warrant, as *Roland* makes clear was a necessity,[3] before taking steps to effectuate arrests for underage drinking. When they did not, they created the circumstance that forced them to intrude into the home without a warrant in order to prevent the potential destruction of evidence.

¶ 15 In *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 229 (1996), our Supreme Court opined:

> if the police created a danger that their surveillance might be discovered because they stopped Melendez's car, they can hardly be allowed to rely on that to justify a warrantless intrusion. **Had the police simply waited for the search warrant, they could have searched the dwelling and avoided the problems of the present case.**

(Emphasis added). The same commentary applies here, had the police simply applied for a search warrant and waited for its arrival before deciding to enter the premises, they could have effectuated the law enforcement purpose without sacrificing the Fourth Amendment protections against warrantless searches. Conversely, if exigency can be found under facts like those presented here, the need for a warrant could be obviated in many cases. Once police developed probable cause to believe illegal activity was taking place inside a residence, or even the suspicion of the same, police could simply knock upon the door rather than go through the trou-

ble of obtaining a warrant. If the police officer's suspicions are confirmed by what they see when the door is opened, or if the occupants act in such a manner as to suggest evidence might be destroyed if the officers waited, then the "exigency" found here would be created and the police could then make a warrantless entry to prevent the destruction of evidence. The Fourth Amendment could be made substantially impotent if this were the case.

¶ 16 In further attempting to distinguish *Roland,* the Commonwealth also contends that this was not a case of a simple summary offense but rather was a "serious offense," *i.e.*, marijuana possession. It is true that, once burnt marijuana was smelled, the suspected crime rose from underage drinking, a summary offense, to marijuana possession. In fact, Appellant, along with other of the partygoers, was charged with misdemeanor possession of marijuana for which Appellant received thirty days of reporting probation. However, this is a far cry from a situation where someone's life was endangered or a felony was involved. Thus, although involving a more serious offense than the underage drinking discussed in *Roland,* it still represents a considerably less serious offense than the grave offense (particularly one of violence) mentioned in *Roland.* As the Court in *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177, 1179 (1978), asserts, where the offense is not such a grave, violent offense, "the justification for proceeding without a warrant is **more likely absent**." (Emphasis added.)

¶ 17 Moreover, *Roland* was not truly limited to a summary offense as argued by the Commonwealth. Roland was convict-

---

**3.** "Given probable cause to believe that the offense of underage drinking was present, police should have obtained a warrant before searching appellant's home. Underage drinking is not a grave crime of violence, such as

might have justified a warrantless entry. See *Commonwealth v. Williams,* supra; *Welsh v. Wisconsin,* supra. Rather, it is a summary offense. 18 Pa.C.S. § 6308(a)." *Roland,* 637 A.2d at 271.

ed, *inter alia,* of furnishing alcohol to minors. *Roland,* 637 A.2d at 270. Furnishing alcohol to a minor is a third degree misdemeanor. *See* 18 Pa.C.S. § 6310.1. While the police may have been investigating underage drinking when they knocked on Roland's door, once an adult answered the door, there was evidence from which it could have been deduced that the appellant was guilty of furnishing alcohol to minors, a misdemeanor. The same occurred here. Police suspected only underage drinking, but were confronted with evidence of a misdemeanor marijuana possession when the door was opened. The fact that Roland was convicted of a misdemeanor and that evidence of that crime was available to the officers at the time they entered the house apparently did not affect the Court's analysis in *Roland.* That is, the Court refused to use this objective and retrospective justification to validate the search. Rather, the Supreme Court focused upon the officers' knowledge and intent when they went to the residence. A similar approach to the facts here indicates that the entry, *i.e.,* opening of the door, was secured upon knowledge of only underage drinking.

¶ 18 Regardless of the above distinction, in weighing the factors to determine whether exigency existed, when we also consider the fact that the police had ample opportunity to secure a warrant before beginning their "investigation" and that there was no reason to forego the securing of a warrant in this case, we believe the more seriousness of the offense found here over the one discussed in *Roland* is insufficient to tip the scales toward a finding of exigency. The fact remains that the officers believed the teens were using intoxicating substances. The teens were, although the substances included marijuana.

¶ 19 Our viewpoint is not changed by the recent case by a panel of this Court in

*Commonwealth v. Walker,* 836 A.2d 978 (Pa.Super.2003). In *Walker,* police officers responded to complaints of drug activity at a specific motel room. As they approached the motel in a marked police car, one of the officers was able to observe Walker holding a glass cylinder approximately 1/4 inch in diameter and four inches long with burn marks on the ends. Based upon his experience and training, the officer concluded the item was a crack pipe. Upon seeing the police car, Walker turned and entered the motel room. The police immediately entered the hotel room and found Walker at the dresser. A brief search resulted in the finding of 24.5 grams of cocaine as well as other drug paraphernalia. In distinguishing *Roland* and concluding that exigency existed, we relied in large part upon the seriousness of the offense. However, notably, possession of crack cocaine is a felony whereas possession of small amounts of marijuana is a misdemeanor. Moreover, unlike the situation here, the police did not possess an opportunity to seek a warrant after they acquired sufficient knowledge of criminal activity and while they remained undetected. As such, the exigency was completely unrelated to the officer's actions.

¶ 20 For the foregoing reasons, we conclude that the warrantless entry into the apartment was not supported by an exigency that would justify the warrantless entry. Additionally, we conclude that if there were an exigency, it was created by the officers' choice to attempt a warrantless entry rather than taking steps to secure a search warrant. As such, the search and subsequent seizure of evidence was unconstitutional and the fruits of the search and seizure should have been suppressed.

¶ 21 Judgment of sentence vacated. Order denying Appellant's motion to sup-

press reversed. Case remanded for new trial.