## Commonwealth v. Ortega-Cruz

C.P. of Berks County, no. 3154-06.

*Jason Lutcavage,* for Commonwealth.
*Craig Snyder,* for defendant.

BUCCI, *J.,* December 5, 2006—The defendant was charged with possession with intent to deliver a controlled substance, possession of a controlled substance, and possession of drug paraphernalia, to wit, small plastic bags and a scale, all of which arose from a search of the defendant's residence which occurred on June 25, 2006 between 8:30 p.m. and midnight.

However, following an omnibus pretrial hearing, on October 30, 2006, this court granted defendant's motion for suppression of evidence. This court's findings of facts and conclusions of law are attached and incorporated by reference herein.

On November 22, 2006, the Commonwealth filed a notice of appeal from this court's order. On November 28, 2006, this court ordered the Commonwealth to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. §1925(b). On December 4, 2006, the Commonwealth filed a concise statement.

The Commonwealth raises on appeal the sole issue of whether the defendant, Antonio Ortega-Cruz, had a legitimate expectation of privacy in the area searched, that is, unit 1 of an apartment building at 156 N. 9th Street, Reading, Berks County, Pennsylvania.

First of all, the Commonwealth has failed to raise the issue of the defendant's expectation of privacy until appeal. This court has reviewed the transcript of the pretrial hearing and cannot find an instance where the Commonwealth challenged the defendant's expectation of privacy in his apartment. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. §302(a). See also, *Commonwealth v. Duffy*, 832 A.2d 1132 (Pa. Super. 2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004); *Commonwealth v. Jackson*, 765 A.2d 389 (Pa. Super. 2000); *Commonwealth v. Garcia*, 847 A.2d 67 (Pa. Super. 2004), *reh'g denied*, *appeal granted in part*, 580 Pa. 12, 858 A.2d 1161 (2004), *aff'd*, 585 Pa. 160, 888 A.2d 633 (2005). Accordingly, this court finds that the Commonwealth has waived any

challenge to the defendant's expectation of privacy pursuant to Pa.R.A.P. §302(a).

Furthermore, according to Officer Driesbach's testimony, the defendant was inside the apartment when he first talked to the defendant. N.T., pretrial hearing, 10/13/06, at 10. This court has heard no evidence that this apartment was not the defendant's residence. Therefore, this court is at a loss as to why the defendant would not have a legitimate expectation of privacy in his own apartment. Indeed, the defendant would surely have a greater expectation of privacy in his own apartment then anywhere else. See *e.g., In re Petition to Compel Cooperation with Child Abuse Investigation,* 875 A.2d 365, 373 (Pa. Super. 2005), quoting *Commonwealth v. Flewellen,* 475 Pa. 442, 446, 380 A.2d 1217, 1219-20 (1977) ("Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society").

Therefore, for the reasons detailed above, this court respectfully requests that the Commonwealth's appeal be denied and this court's order affirmed.

## FINDINGS OF FACT

(1) The defendant is charged with possession with intent to deliver a controlled substance, possession of a controlled substance, and possession of drug paraphernalia, to wit, small plastic bags and a scale, all of which arose from a search of the defendant's residence which occurred on June 25, 2006 between 8:30 p.m. and midnight.

At approximately 8:30 p.m. on June 25, 2006, Officer Eric Driesbach of the Reading Police Department was operating his marked patrol vehicle while in full uniform in the 100 block of North 9th Street in the City of Reading, Berks County, Pennsylvania.

(2) Officer Driesbach observed the defendant hanging out of a second story window of an apartment building at 156 North 9th Street, and he observed the defendant toss two lit "incher" firecrackers out of the window.

(3) There is no evidence that there was anyone on that street who was endangered by the firecrackers or that the firecrackers caused any damage to property.

(4) Officer Driesbach stopped and parked his patrol car and then entered the public portion of the apartment building, ascending to the second floor hallway with the intent to locate the defendant and to issue the defendant a summary violation citation for the firecracker incident.

(5) When Officer Driesbach reached the second floor hallway he observed the defendant standing in the doorway of apartment unit 1 and recognized the defendant as the person who had minutes earlier tossed the firecrackers out of the second story window. Although Officer Driesbach said the defendant was at the doorway, he admitted that the defendant was standing on the other side of the threshold of the apartment. Therefore, this court finds that the defendant was inside his residence when Officer Driesbach initially encountered him.

(6) Officer Driesbach asked the defendant for identification to which the defendant did not verbally respond but instead "turned and walked away" to somewhere else

in the apartment beyond Officer Driesbach's field of vision. At no time did Officer Driesbach inform the defendant that he was being cited for throwing the firecrackers out of the window or that he was being arrested or detained.

(7) Officer Driesbach then "heard footsteps or someone running" and he heard a door slam shut. Officer Driesbach testified these noises caused him to fear for his safety.

(8) Officer Driesbach then entered the apartment to look for the defendant, at which point he observed the defendant standing next to a bed in an adjacent room. On the bed near where the defendant was standing, Officer Driesbach observed a small scale, a mirror, and a very small quantity of marijuana on the top of the mirror.

(9) Officer Driesbach immediately handcuffed the defendant. He did so to prevent the defendant from destroying the evidence.

(10) After handcuffing the defendant, Officer Driesbach conducted a "protective sweep" of the premises and located five more people in the apartment, all of whom were detained.

(11) During this protective sweep, Officer Driesbach observed four or five bags of marijuana in plain view on a small table.

(12) Officer Driesbach then contacted Criminal Investigator Colon of the Reading Vice Division to request Officer Colon to obtain a nighttime search warrant for the premises. At 12:15 a.m. Officer Colon obtained a nighttime search warrant from the magisterial district

judge. During the search of the apartment conducted pursuant to the search warrant, police discovered another small bag of marijuana on the floor under a chair in the front bedroom and various packaging material.

## CONCLUSIONS OF LAW

(13) "In a private home, 'searches and seizures without a warrant are presumptively unreasonable . . . .' . . . Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment." *Commonwealth v. Roland,* 535 Pa. 595, 599, 637 A.2d 269, 270 (1994). (internal citations omitted)

(14) *Roland* sets forth a number of factors to be considered in determining whether exigent circumstances exist, including: "(1) [T]he gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.,* whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified." *Id.* at 599, 637 A.2d at 270-71.

(15) Other factors that a court should consider include "whether there is [a] hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or

other persons inside or outside the dwelling." *Id.* at 599, 637 A.2d at 271.

(16) However, "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. . . . Where an offense being investigated by police is a minor one, balancing of the foregoing factors should be weighted against finding that exigent circumstances exist." *Id.* at 599-600, 637 A.2d at 271 (citing *Welsh v. Wisconsin,* 466 U.S. 740, 749-50 (1984)). (citations omitted)

(17) Additionally, an entry made at night raises particular concerns over the reasonableness of the entry. See *Commonwealth v. Demshock,* 854 A.2d 553, 556 (Pa. Super. 2004) (citing *Commonwealth v. Williams,* 483 Pa. 293, 299, 396 A.2d 1177, 1180 (1978)).

(18) The burden is on the Commonwealth to demonstrate the existence of exigent circumstances sufficient to overcome the presumption of unreasonableness that attaches to all warrantless entries into a private home. *Id.*

(19) And as the Pennsylvania Supreme Court noted in *Roland,* "It is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Supra* at 600, 637 A.2d at 271 (suppressing evidence seized pursuant to a warrantless search of a home where the offense involved was summary underage drinking). See also, *Commonwealth v. Demshock,* 854 A.2d 553 (Pa. Super. 2004) (suppressing evidence of a warrantless search of a residence where the offenses involved were summary underage drinking and misdemeanor marijuana possession).

(20) Here, this court concludes that the Commonwealth has not met its burden in establishing the existence of exigent circumstances sufficient to overcome the presumption of unreasonableness that attaches to all warrantless entries into a private home.

(21) Although Officer Driesbach's actually saw the defendant throw two small "incher" firecrackers from his apartment window, the offense the officer observed was a minor summary offense that presented no immediate danger to persons or property. This court is familiar with "incher" firecrackers and, while these firecrackers are illegal, they are unlikely to damage property. Nor was there evidence that anyone was present in the vicinity, and therefore, no evidence of risk of harm to any person other than the defendant himself. There appears to be little risk that the defendant would flee, and the entry occurred late at night. These factors weigh against finding exigent circumstances.

(22) While Officer Driesbach expressed concern for his safety, this court is not convinced that his fears were reasonable. Considering the minor, non-violent nature of the offense, the noises that the officer heard inside the apartment were just as likely to have been created by the defendant's search for identification as they were to have been created by the defendant's search for a weapon. Furthermore, if Officer Driesbach did fear for his personal safety, a more prudent course of action would have been to call for back up and to remain outside the apartment until his fellow police officers arrived to assist him, rather than enter the apartment as he did.

(23) Having carefully considered the totality of the circumstances, this court finds that there were no exigent

250

circumstances supporting Officer Driesbach's warrant-less entry into, and search of, the defendant's residence and that for the above reasons, the defendant's motion for suppression of evidence must be granted.

### ORDER

And now, December 5, 2006, upon consideration of the defendant's omnibus pretrial motion for relief, it is hereby ordered and decreed that defendant's motion for suppression of evidence is hereby granted.