**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Lee ARNOLD, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 29, 2006.

Filed Aug. 21, 2007.

Michael O. Palermo, Jr., Carlisle, for appellant.

Daniel W. Stern, Asst. Dist. Atty., N. Bloomfield, for the Com., appellee.

BEFORE: FORD ELLIOTT, P.J., LALLY–GREEN and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this case, we consider whether police officers may justify the search of a casual visitor to an apartment based upon the claim that the individual searched lacked a reasonable expectation of privacy in the apartment. Here, police officers, solely to investigate a noise complaint, entered the apartment without a warrant and without probable cause and exigent circumstances. While in the apartment, the officers observed the Appellant, Lee Arnold, pass a marijuana pipe to another person. The Commonwealth seeks to justify the subsequent search of Arnold's person based solely upon his lack of a reasonable expectation of privacy in the apartment. The Commonwealth contends that for this reason, it would not need to support the officers' warrantless entry with exigent circumstances.

¶ 2 Following a review of the circumstances at the moment of the intrusion, and applying the prevailing case law, we find the Commonwealth's reliance on Arnold's reasonable expectation of privacy in the apartment misplaced. The police officers did not search the apartment but instead searched Arnold's person to find the contraband. As the police officers did not have a warrant, failed to demonstrate the exigency of the situation, and did not form the probable cause necessary to arrest Arnold, we find the officers' entry into the apartment and the subsequent search of Arnold to be illegal. Hence, we conclude that the trial court erred in denying Arnold's motion to suppress the drug evidence. Accordingly, we reverse the order denying suppression and remand the case to the trial court for proceedings consistent with this Opinion.

¶ 3 The relevant facts of this case are as follows. In the early morning hours on August 28, 2005, the police received a noise complaint from an apartment building at 325 Market Street in Newport Borough, Perry County. Residents of a downstairs apartment complained about noise coming from an upstairs apartment. Two troopers, Trooper Fultz and Trooper Kline with the Pennsylvania State Police, responded to the complaint. After speaking with the downstairs residents, Trooper Fultz went upstairs and approached a separate and distinct door from the downstairs apartment. Trooper Fultz knocked on the door and rang the doorbell but received no response. After finding the door unlocked, Trooper Fultz opened it, entered the apartment, and went to the bottom of a flight of stairs. Trooper Fultz testified that he believed that he was in a common area of the apartment building at this point. Trooper Fultz then saw a female come halfway down the steps, see the police, and run back up the steps yelling the police are here. Trooper Fultz followed the female up the steps and upon reaching the top of the steps, he observed Arnold pass a marijuana pipe to David Amtower. The troopers arrested Arnold and Amtower. A subsequent search of their persons revealed that both men had small amounts of marijuana.

¶ 4 The Commonwealth charged Arnold by criminal complaint with possession of a small amount of marijuana and possession of drug paraphernalia. See 35 P.S. §§ 780–113(a)(31)(i), (32) (respectively). On November 30, 2005, Arnold filed a motion to suppress the evidence, arguing that the officers entered the apartment without a warrant and without any articulable exigent circumstances. The trial court, the Honorable C. Joseph Rehkamp, P.J., denied the motion, finding that exigent circumstances and the officers' good faith belief that they were in a common area

when they observed the marijuana pipe justified the intrusion. On February 16, 2006, President Judge Rehkamp presided over a bench trial and found Arnold guilty of one count of possession of a small amount of marijuana and one count of possession of drug paraphernalia. Immediately thereafter, President Judge Rehkamp sentenced Arnold to forty hours to thirty days' incarceration for possession of small amount of marijuana and one year of probation along with a fine of $250.00 for possession of drug paraphernalia. The sentences were to be served concurrently. On February 23, 2006, Arnold filed a post-sentence motion, arguing the trial court abused its discretion when it imposed a sentence in the aggravated range because it did not specifically state any reasons on the record for such a sentence. The trial court denied this motion on March 28, 2006.

¶ 5 Arnold now appeals, raising the following questions for our review:

A. Did the Suppression Court err in denying the omnibus pretrial motion to suppress all evidence seized from appellant and the residence in violation of his rights under the Constitutions of the Commonwealth of Pennsylvania and the United States of America:

   1. where . there was no probable cause to enter the residence without a warrant and where no exigent circumstances existed?

   2. where the officer presented contradictory testimony as to the basis of his entry into the residence and relied upon a "good faith" exception to [the] warrant requirement where no such exception exists under the Pennsylvania Constitution?

B. Did the sentencing Court err in sentencing Defendant to a term of imprisonment in the aggravated range without placing the reasons therefore [sic] immediately upon the record:

   1. where the defendant had a prior record score of zero (0) and reasons for the sentence in the aggravated range were not placed upon the record?

   2. where defendant was sentenced in accordance with the 41st Judicial District *De facto* sentencing policy of giving all those convicted of Possession of a Small Amount of Marijuana forty-eight (48) hours of incarceration?

Brief for Appellant at 8 (formatting edited).

▮▮▮▮ ¶ 6 In his first question on appeal, Arnold contends that the trial court erred in failing to suppress the fruits of the illegal search. Brief for Appellant at 17. Our standard when reviewing a trial court's denial of a motion to suppress is well-established:

> In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Cornelius*, 856 A.2d 62, 70 (Pa.Super.2004) (citation omitted).

¶ 7 Arnold argues that the drug evidence should be suppressed because the police officers' entry into the apartment was illegal as it was done without a warrant and without exigent circumstances. Brief for Appellant at 17. Arnold concludes that because the entry was unlawful, the fruits of the illegal search must be suppressed. Brief for Appellant at 17–18. After study, we agree and find that the disposition of this case is controlled by our Supreme Court's decision in *Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269 (1994), and this Court's decision in *Commonwealth v. Demshock*, 854 A.2d 553 (Pa.Super.2004).

¶ 8 The Supreme Court of Pennsylvania, in *Roland*, set forth the principles and considerations expressed in the United States and Pennsylvania Constitutions governing warrantless searches of the home:

In a private home, searches and seizures without a warrant are presumptively unreasonable[.] Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. In determining whether exigent circumstances exist, a number of factors are to be considered[:] (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was made peaceably, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified. Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

Where an offense being investigated is a minor one, a balancing of the foregoing factors should be weighted against finding that exigent circumstances exist.

\* \* \* \*

***It is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.***

*Roland*, 637 A.2d at 270–71 (internal citations and quotation marks omitted, emphasis added).

¶ 9 In *Roland*, police officers received a call indicating an assault had been perpetrated against a nineteen-year-old male. *See Roland*, 637 A.2d at 270. The victim told the police that he had been assaulted while at a party at Roland's home. *See id.* The victim indicated that there was underage drinking as well as marijuana use at the party. *See id.* Based upon this information, the police proceeded to Roland's home and knocked on the door. *See id.* When the door was opened, the police observed several minors next to open cans of beer. *See id.* Believing that underage drinking was taking place, the police conducted a search of the home. *See id.* They found numerous opened and unopened cans of beer, a small bag of marijuana, marijuana seeds, and a pipe containing marijuana residue. *See id.* The police arrested Roland who subsequently admitted to providing minors with alcohol. *See id.* Roland filed a motion to suppress the evidence found by the police; however the

trial court denied this motion. *See id.* Our Court affirmed the denial, holding that potential removal of the beer cans before the police could get a warrant justified the entry without a warrant. *See id.* at 271–72. Our Supreme Court reversed this Court, concluding the police had no exigent circumstances in entering the home without a warrant. *See id.* at 271. The Court stated that underage drinking "is not a grave crime of violence, such as might have justified a warrantless entry" and that the proper action by the police would have been to obtain a warrant prior to searching Roland's home. *Id.*

¶ 10 Similarly, in *Demshock,* police officers were patrolling the parking lots of apartment buildings due to an increase of automobile theft and vandalism. *See* 854 A.2d at 554. During a patrol, Detective Hopple was walking between two apartment buildings when he observed, through a window, individuals he believed to be teens consuming beer. *See id.* Detective Hopple and other officers proceeded to the front door and knocked on the door while covering the peephole. *See id.* In response to the knocking, an occupant asked "who was there" to which Detective Hopple replied "[h]ey man, it is me." *Id.* (citation omitted). The person opened the door and after seeing the police officers, backed away from the door. *See id.* The officers proceeded through the doorway and observed marijuana in plain sight. *See id.* at 554–55. The officers then told the teenagers that if anyone had marijuana, they should put it on the table. *See id.* at 555. Demshock threw a bag of marijuana onto the table. *See id.* The police arrested him and charged him with possession of marijuana and underage drinking. *See id.* Demshock filed a motion to suppress the evidence which the trial court denied. *See id.* This Court reversed the trial court, finding that the police did not articulate any exigent circumstances when entering the apartment. *See id.* at 556. This Court concluded that since the only observed offense, underage drinking, was a minor one, the police should have obtained a search warrant prior to entering the residence. *See id.* at 557–58. Further, this Court concluded that the Commonwealth's proffered reason for the warrantless entry, the need to prevent the destruction of drug evidence, was not supported by the record as the Commonwealth cannot provide retroactive justifications for an illegal entry. *See id.* at 557. The police found the drugs only after they had illegally entered the apartment and therefore, the presence of the drugs was not part of their reasoning in entering the apartment. *See id.* ("It is well established that police cannot rely upon exigent circumstances to justify a warrantless entry where the exigency derives from their own actions.").

¶ 11 In both *Roland* and *Demshock,* police officers conducted warrantless intrusions upon occupants in a home whose first encounter with the police was after the front door of the home had been opened in response to a knock. In each of these cases, the police observed marijuana (*Demshock*) and underage drinking (*Roland*) upon entering. However, our Courts determined that the evidence found in the homes should be suppressed as the police could not cite any exigent circumstances allowing the initial entry into the home. *See Roland,* 637 A.2d at 271–72 (finding the underage teens could have been apprehended for illegal consumption of alcohol if they had left the home prior to obtaining a warrant); *Demshock,* 854 A.2d at 557 (finding that entry by the officers into home was solely based upon an attempt to cite teens for underage drinking).

¶ 12 The facts in the case at bar do not reach even the gravity of the summary offenses found in *Roland* and *Demshock.*

While in those cases, the police entered the premises after observing underage drinking, in the present case, the police had no independent reason to be on the premises other than the report of a summary offense of a noise violation. *See Roland*, 637 A.2d at 271 (finding "[a]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense[.]"). Trooper Fultz did not observe any illegal activity prior to entering the apartment. Following the reasoning found in *Roland* and *Demshock*, the summary offense of a noise violation, without any other evidence of illegal activity, would not allow police officers to enter an apartment absent a warrant or probable cause and exigent circumstances. Since the officers did not have a warrant and could not articulate exigent circumstances at the time of the entry, they were not legally entitled to be inside the apartment. Furthermore, to the extent the trial court found that the intrusion was justified based upon the officers' good faith belief that they were entering a common area of the apartment building, we conclude that this finding is in error. Our Supreme Court has specifically ruled that there is no good faith exception to the exclusionary rule. *See, e.g., Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 888 (1991) (concluding that a "good faith" exception to the exclusionary rule in Pennsylvania would frustrate the privacy guarantees embodied in Article I, Section 8 of the Pennsylvania Constitution). As the search occurred only after the police officers unlawfully entered the apartment without probable cause and exigent circumstances, the subsequent seizure of the marijuana and the marijuana pipe should have been suppressed as the fruits of an illegal search.

¶ 13 The Commonwealth contends, however, that since Arnold, as a visitor, had no reasonable expectation of privacy in the apartment, the fact that the police were illegally on the premises does not prohibit the search and seizure. Brief for Appellee at 5–6. The Commonwealth, relying principally upon our Supreme Court's ruling in *Commonwealth v. Millner*, 585 Pa. 237, 888 A.2d 680 (2005), argues that Arnold must first prove that he had a reasonable expectation of privacy in the place searched before the burden shifts to the Commonwealth to prove that the evidence was properly seized. Brief for Appellee at 6. While we agree with the reasoning in *Millner* as it applies to the facts of that case, we hold that it is factually inapposite to the case at bar.

¶ 14 *Millner* involved a defendant who attempted to suppress a weapon found in plain view in a vehicle. *See* 888 A.2d at 682. There, police officers were on a routine patrol when they heard gunshots. *See id.* at 683. After hearing from dispatch that there had been gunshots reported in their area, the police came upon two men standing outside a vehicle, one of whom was holding a gun. *See id.* As the police approached the two men, they saw one man place the gun into an open bag in the backseat of the vehicle. *See id.* The officers identified themselves and saw Millner close the trunk of the car and his companion throw a clear plastic bag to the ground. *See id.* The police officers found that the plastic bag contained drugs. *See id.* They then patted down Millner and found 41 packets of crack cocaine. *See id.* After placing Millner under arrest, the police found $449 in cash on his person and subsequently seized the gun out of the vehicle. *See id.* Millner attempted to have the gun suppressed; however, our Supreme Court found that he failed to meet his burden of establishing a reasonable expectation of privacy in the parked vehicle and that the

gun should not be suppressed. *See id.* at 692.

¶ 15 *Millner* involved a seizure of evidence from a vehicle after the police officers had arrested the suspect. Our Supreme Court premised its allowance of the seizure on the fact Millner did not have a reasonable expectation of privacy in the vehicle. However, prior to the seizure, the officers had heard gunshots, observed the defendant and his companion with a gun, found drugs on the defendant, and arrested the defendant. Significantly, the officers observed the gun from a public street, a vantage point where they were legally entitled to be. By contrast, here, the police were inside the apartment illegally. The police did not observe any unlawful activity and had no reason to enter the apartment apart from an alleged noise violation. The officers had not secured a warrant and were not able to articulate probable cause and exigent circumstances to enter the apartment. As the officers were unlawfully inside the apartment, their observation of the marijuana pipe in plain view would not allow the seizure of the pipe. *See Commonwealth v. Davis,* 743 A.2d 946, 952 (Pa.Super.1999) (citing *Commonwealth v. Graham,* 554 Pa. 472, 721 A.2d 1075, 1079 (1998)) ("[E]vidence may be seized by the police when it is in 'plain view' *only* if the police observe the evidence from a vantage point [at] which they are legally entitled to be.") (emphasis in original). Moreover, the subsequent search and seizure of the marijuana from Arnold's person was illegal as the police were unlawfully on the premises, could not articulate a reason for conducting the search, and most importantly, Arnold had a reasonable expectation of privacy in his person. *See* Pa. Const. art. I, § 8 ("The people shall be secure in their **persons,** houses, papers and possessions from unreasonable searches and seizures[.]") (emphasis added).

¶ 16 For these reasons, we conclude that the fact that Arnold was not a resident of the apartment is not relevant in the disposition of this matter. Indeed, to apply the reasoning of *Millner* under the facts found here would permit police officers to provide retroactive justifications and randomly invade homes on the pretense that any person found to be a non-resident after the fact could be searched. *See Demshock,* 854 A.2d at 556–57 (finding police must articulate exigent circumstances at time of entry and cannot provide retroactive justifications to demonstrate exigent circumstances). Allowing the Commonwealth to provide such justifications following a random invasion into a home without a warrant or probable cause and exigent circumstances would trivialize the protections afforded by the United States and Pennsylvania Constitutions. *See Davis,* 743 A.2d at 953 (reiterating that allowing the police to observe illegal activities by their own unlawful means "emasculates the protections afforded to appellant and all citizens by the United States and Pennsylvania Constitutions."). As the police officers did not legally enter the apartment, we conclude that the drug evidence and paraphernalia should have been suppressed as the fruits of an illegal entry and search. *See Demshock,* 854 A.2d at 559 (concluding that the entry and search of the apartment was unconstitutional and hence the fruits of the search should have been suppressed).

¶ 17 As we find the evidence should have been suppressed, we find no need to address Arnold's second question related to sentencing.

¶ 18 For the foregoing reasons, we reverse the judgment of sentence and remand the case to the trial court with instruction to suppress the evidence seized by the officers.

¶ 19 Judgment of sentence **RE-VERSED.** Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**

¶ 20 LALLY–GREEN, J., files a Dissenting Opinion.

DISSENTING OPINION BY LALLY–GREEN, J.:

¶ 1 While the Majority sets out a very persuasive analysis, I nevertheless dissent because I believe binding Supreme Court precedent controls Appellant's case. Specifically, I believe that under our Supreme Court's decision in *Commonwealth v. Millner*,[1] Appellant must first demonstrate a reasonable expectation of privacy in the area where the contraband was found. Since the record fails to reflect such demonstration, I would affirm the conviction. I would also vacate the judgment of sentence, but for different reasons, as set forth below.

¶ 2 In *Millner*, our Supreme Court engaged in a thorough, historical, and comprehensive analysis of the Court's "reasonable expectation of privacy" requirement. In order to illustrate the broad scope of the Court's analysis, I will quote it here with minimal editing:

A proper understanding of the defendant's preliminary burden at a suppression hearing begins with consideration of this Court's seminal decision in *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (Pa.1983). In *Sell*, we held that, under Article I, Section 8 of the Pennsylvania Constitution, a criminal defendant charged with a possessory offense has "automatic standing" to pursue a motion to suppress evidence where that evidence (most typically, contraband or firearms) forms the very basis for the possessory crime, and the claim is that the evidence was the fruit of an unlawful seizure. The *Sell* Court viewed its automatic standing holding as significantly more protective of privacy rights than then-emerging Fourth Amendment jurisprudence from the U.S. Supreme Court, which had moved away from a preliminary standing analysis and adopted a substantive approach which analyzed Fourth Amendment claims by focusing on whether the challenged search or seizure implicated a reasonable and legitimate privacy expectation that was personal to the defendant. *See, e.g., Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The *Sell* Court noted that, under *Rakas*, *Salvucci* and *Rawlings*, the "sole determinant of the scope of protection afforded" under the Fourth Amendment was the defendant's "ability to prove a 'legitimate expectation of privacy' by the 'totality of the circumstances.'" 470 A.2d at 466.

After analyzing Article I, Section 8, and recognizing this Court's authority to find greater protection of privacy rights under our state charter, the *Sell* Court noted:

We decline to undermine the clear language of Article I, section 8 by making the Fourth Amendment's amorphous "legitimate expectation of privacy" standard a part of our state guarantee against unreasonable searches and seizures. We do so not only because we find the United States Supreme Court's analytical distinction between "standing" and "threshold substantive question," *see*

---

**1.** *Commonwealth v. Millner*, 585 Pa. 237, 888    A.2d 680 (2005).

*Rakas, supra* 439 U.S. at 139 n. 7, 99 S.Ct. at 428 n. 7, unhelpful to our interpretation of Article I, section 8's protection, but also because we believe the United States Supreme Court's current use of the "legitimate expectation of privacy" concept needlessly detracts from the critical element of unreasonable governmental intrusion.

470 A.2d at 468.

Notwithstanding the *Sell* Court's rather broad criticism of the substance of the *Rakas/Salvucci/Rawlings* approach to search and seizure questions, its holding was very narrow. The *Sell* case came to this Court as an appeal from a Superior Court ruling which held that the defendant, who was charged with receiving stolen property, but who was not present when police executed the search warrant which led to the seizure of the stolen firearms at his place of business, lacked standing even to challenge the constitutionality of the search. *Sell* held that the "automatic standing" doctrine remained viable in Pennsylvania; and, since receiving stolen property is a possessory offense, *Sell* remanded to the Superior Court for consideration of the merits of the defendant's challenge to the constitutionality of the search. 470 A.2d at 469.

After *Sell,* some confusion arose concerning what burden, if any, the Pennsylvania automatic standing defendant had in a suppression hearing, particularly in light of the U.S. Supreme Court's focus upon a defendant's reasonable expectation of privacy in assessing Fourth Amendment claims. The confusion most notably manifested itself in the Superior Court's decision in *Commonwealth v. Peterson,* 408 Pa.Super. 22, 596 A.2d 172 (1991). Citing to a number of this Court's post-*Sell* decisions, the lead opinion by Judge Beck noted that, in order to prevail upon a suppression motion, the defendant has a preliminary burden to show that the challenged police conduct implicated a reasonable expectation of privacy he had in the area searched or item seized. 596 A.2d at 174–76 & nn. 2–4 (discussing, *inter alia, Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353 (1991); *Commonwealth v. Oglialoro,* 525 Pa. 250, 579 A.2d 1288 (1990); and *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988)). The concurring opinion, however, construed *Sell* differently, arguing that it had purported to establish a state constitutional rule that was more protective of privacy than the federal reasonable expectation of privacy test. Thus, the concurrence argued that:

> If the reasonableness of a governmental intrusion can be evaluated only when the search or seizure implicated the *particular* defendant's reasonable expectation of privacy, the *Sell* rule is *identical* in all practical respects to the federal approach. I find it hard to believe that *Sell* stands only for the proposition that, when the court inevitably denies the defendant's motion to suppress, it is imperative to announce that there is "no reasonable expectation of privacy" rather than no standing. If the *Sell* Court intended this result, it would have been much easier simply to adopt *Salvucci.*

596 A.2d at 187 (Hoffman, J., concurring) (emphases original). The concurrence thus construed *Sell* as permitting automatic standing defendants to vicariously assert the privacy rights of others in some instances.

This Court granted further review in *Peterson* and specifically addressed the interplay of standing principles and the role of the substantive "reasonable expectation of privacy" analysis. Our

unanimous opinion rejected the Superior Court concurrence's construction of *Sell* and made it explicitly clear that *Sell's* automatic standing holding did not absolve the suppression defendant of his obligation to demonstrate that the challenged police conduct implicated a reasonable expectation of privacy that he personally possessed:

Standing denotes the existence of a legal interest. In the context of this case, the term refers specifically to appellant's right to have the merits of his suppression motion adjudicated without a preliminary showing of ownership or possession in the premises or effects seized. *Sell, supra,* established the existence of this right unequivocally, holding that a charge of possessory offenses is sufficient, without more, to confer standing. At no time was appellant's standing in this matter contested. However, having had his standing acknowledged, appellant is then required to establish that the challenge he has without question legitimately raised is itself legitimate. In order to do so, he must demonstrate that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded that the warrantless entry of the police violated his right under the Constitution of this Commonwealth, Article 1, Section 8, to be "secure against unreasonable searches and seizures." *See, Commonwealth v. Brundidge,* 533 Pa. 167, 170, 620 A.2d 1115, 1118 (1993); *Commonwealth v. Oglialoro,* 525 Pa. 250, 256, 579 A.2d 1288, 1290–1 (1990). He must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises. *See, Commonwealth v. Cameron,* 385 Pa.Super. 492, 561 A.2d 783 (1989) *alloc. denied,* 525 Pa. 576, 575 A.2d 108 (1990). The Superior Court concurrence failed to distinguish between the necessity for a preliminary demonstration of proprietary or possessory interest, a necessity which does not exist in Pennsylvania, and the necessity of demonstrating the merits of a suppression claim. Appellant's automatic standing does not divest him of the evidentiary responsibility to show that the warrantless entry into the storefront by law enforcement personnel [the police conduct at issue] violated a reasonable and legitimate expectation of privacy.

[*Com. v. Peterson,* 535 Pa. 492,] 636 A.2d [615] at 617–18 [(1993)].

Later decisions from this Court have reaffirmed *Peterson's* approach to the suppression defendant's burden without qualification. *E.g. Commonwealth v. Hawkins,* 553 Pa. 76, 718 A.2d 265, 267 (Pa.1998) ("essential effect" of automatic standing doctrine "is to entitle a defendant to an adjudication of the merits of a suppression motion. In order to prevail on such a motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was 'actual, societally sanctioned as reasonable, and justifiable.'") (citations omitted) (thoroughly discussing evolution of doctrine); *Commonwealth v. Gordon,* 546 Pa. 65, 683 A.2d 253, 256–59 (Pa.1996) (particularly emphasizing defendant's burden to prove both subjective expectation of privacy and that subjective expectation is one which society is willing to respect as legitimate). In addition, this Court has specifically rejected the notion that Article I, Section 8 should be construed as permitting the vicarious assertion of the privacy interests of others in order to,

*inter alia,* "dissuade intentional, intrusive police conduct." *Hawkins,* 718 A.2d at 268–70.

In the wake of *Peterson* and its progeny, it is clear that, notwithstanding the *dicta* in *Sell* criticizing the substantive federal approach to Fourth Amendment claims, under Article I, Section 8, no less than under the Fourth Amendment, **a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests.**

As we have noted above, in the case sub judice, appellee offered no evidence to demonstrate a personal privacy interest in the vehicle, the search of which formed the basis for his claim that the firearm should be excluded. Appellee produced no evidence that he owned the vehicle, nor did he produce evidence which remotely suggested that he had any other connection to the vehicle which could form the basis for so much as a subjective expectation of privacy. In addition, there was nothing in the Commonwealth's evidence upon which appellee could rely to prove that he had an expectation of privacy in the Cadillac in question. The police testimony established that nothing was found in the vehicle, on appellee's person, or through a record search, to suggest any lawful connection to the car. Finally, the fact that police testified to seeing appellee put the firearm in the vehicle—a fact appellee denied—alone does not establish both a subjective and reasonable expectation of privacy in a vehicle to which he had no other legitimate connection. Cf. *Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353, 1356 (Pa. 1991) ("A defendant's attempt to secrete evidence of a crime is not synonymous with a legally cognizable expectation of privacy. A mere hope for secrecy is not

a legally protected expectation."). Indeed, the facts at bar suggest far less of a connection with the area searched than other cases in which this Court has held that an expectation of privacy did not exist, *i.e.,* cases where the defendant was actually physically present inside the area searched. *See Gordon,* 683 A.2d at 258 (presence in and use of abandoned property); *Peterson,* 636 A.2d at 618–19 (presence in drug gate house). *Accord Commonwealth v. Cameron,* 385 Pa.Super. 492, 561 A.2d 783 (Pa.Super.1989), *appeal denied,* 525 Pa. 576, 575 A.2d 108 (1989) (presence in abandoned house used for drug operation) (cited with approval in *Peterson*).

*Millner,* 888 A.2d at 689–692 (footnote omitted, bold emphasis added).

¶ 3 Thus, the *Millner* Court recently and comprehensively reaffirmed the broad proposition that defendants who are charged with possessory offenses have automatic standing to file a suppression motion, but they nevertheless carry the initial burden of showing that they had a personal right of privacy in the place to be searched or the items seized. *Id.* Only if the defendant carries this initial burden does the burden then shift to the Commonwealth to prove that the evidence was properly seized. *Id.* at 692. In other words, if the defendant fails to prove a reasonable expectation of privacy, then the suppression motion must fail and it is unnecessary to examine any other issues. *Id.* Obviously, if this threshold requirement did not exist, courts could more easily proceed to the question of whether the police acted unreasonably. Nevertheless, our Supreme Court has held that the threshold requirement remains firmly in place for all suppression cases. *Id.*

¶ 4 In the instant case, Appellant relies solely on the argument that the police had no right to be in the place where they saw

Appellant transfer the pipe. Because Appellant's argument is based on the notion that the police had no right to be in a certain place, we must first ask whether Appellant had any reasonable expectation of privacy in that place.

¶ 5 There is no single test for determining whether a person has a reasonable expectation of privacy in a place. Generally, "[a] legitimate expectation of privacy requires a subjective privacy expectation coupled with objective reasonableness." *Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 542 n. 11 (2001) (citation omitted) (defendant who co-leased an apartment, but did not live there, had no subjective expectation of privacy and thus could not prevail on a suppression motion). The United States Supreme Court has held that an overnight guest in a home has a reasonable expectation of privacy. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *accord Commonwealth v. Cruz,* 578 Pa. 263, 851 A.2d 870, 876 n. 3 (2004) (citing *Olson* with approval); *see also Commonwealth v. Winfield,* 835 A.2d 365, 368–369 (Pa.Super.2003) (person carries a reasonable expectation of privacy in a rented hotel room, but not after the rental term has ended and the checkout time has lapsed). An expectation of privacy is related to the degree of con-

nection to the people in the home, and to the home itself. *See Commonwealth v. Rodriguez,* 451 Pa.Super. 474, 679 A.2d 1320, 1325–1326 (1996) (collecting cases), *appeal denied,* 550 Pa. 681, 704 A.2d 637 (1997). Thus, a mere casual visitor to a home may not have a reasonable expectation of privacy, while a person with greater personal connections may have a reasonable expectation. *Id.*

¶ 6 Here, the record reflects no evidence that Appellant held even a subjective expectation of privacy in Mr. Shull's apartment. The suppression record also reflects no evidence that Appellant was anything other than a casual visitor to Mr. Shull's apartment. Trooper Fultz testified that Mr. Shull rented the apartment. Appellant did not live there. He lived at least eight or nine blocks away, in a different municipality. I would conclude that Appellant failed to carry his initial burden of showing that he had a reasonable expectation of privacy in Mr. Shull's apartment. Accordingly, I would hold that it is unnecessary to decide whether the seizure was warranted under the plain view doctrine[2] or the exigent circumstances doctrine.[3] *Millner.* I would uphold the conviction and permit our Supreme Court to decide whether to reconsider the *Millner* rule.

---

**2.** Our Supreme Court recently set forth a four-prong test that must be met in order for the plain view doctrine to apply. First, the police must view the evidence in question from a legal vantage point. Second, the item itself must be in plain view. Third, the incriminating nature of the item must be immediately apparent. Finally, the police must have a lawful right of access to the item. *Commonwealth v. McCree,* 924 A.2d 621 (Pa. 2007). It would appear that under *Millner,* the plain view doctrine would not come into play until the defendant shows a reasonable expectation of privacy.

The Majority observes that Appellant had an "expectation of privacy" in his person, where the police found the marijuana. While this may be true, I note that the seizure of the

marijuana took place only after the police had probable cause to arrest Appellant with respect to the pipe. The seizure of the marijuana from Appellant's person was justified as a search incident to arrest.

**3.** The Majority cites *Commonwealth v. Demshock,* 854 A.2d 553 (Pa.Super.2004), in support of its position that the police lacked exigent circumstances. Respectfully, *Demshock* does not control because it did not examine the threshold "reasonable expectation of privacy" issue, as our Supreme Court precedent requires. I also note that *Demshock* relied heavily on *Commonwealth v. Roland,* 535 Pa. 595, 637 A.2d 269 (1994). The *Roland* Court did not examine the "reasonable expectation of privacy" issue, either.

¶ 7 While I would uphold the conviction, I would conclude that the highly regarded trial court abused its discretion by sentencing Appellant to an aggravated-range prison term without stating any reasons on the record.[4] Here, the sentencing guidelines themselves state that "when the court imposes an aggravated or mitigated sentence, it shall state the reasons on the record[.]" 204 Pa.Code § 303.13(c); *see also* 42 Pa.C.S.A. § 9721(b) ("In **every case** in which the court imposes a sentence for a felony or misdemeanor, the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.") (emphasis added). This requirement is satisfied where the court states the reasons on the record, in the defendant's presence, at sentencing. *See Commonwealth v. Littlehales*, 915 A.2d 662, 666 (Pa.Super.2007).

¶ 8 Here, the record reflects that the trial court did not state any reasons on the record for the sentence imposed when it announced the sentence. While the trial court attempted to justify the sentence in its Rule 1925 opinion, its explanation, respectfully, is not sufficient to comply with the rule. *Id.* at 666 n. 6.

¶ 9 In its Rule 1925 opinion, the trial court stated that trial judges in Perry and Juniata Counties have a long-standing policy of sentencing defendants such as Appellant (first-time offenders guilty of possession of a small amount of marijuana) to a prison term of 48 hours to 30 days. Trial Court Opinion, 5/1/2006, at 1. This inflexible, non-individualized policy of sentencing all offenders to the same aggravated sentence is impermissible. *See Commonwealth v. Walls*, 926 A.2d 957, 962–64, 966–68, 2007 Pa. Lexis 1431, \*\*12–16, 24–30 (Pa.2007).[5] Thus, I would affirm the conviction, but remand for resentencing.

---

The *Roland* Court may not have examined the issue because it was conceded and obvious, insofar as the police entered the defendant's own home.

4. The record reflects that Appellant properly preserved this issue and raised a substantial question that the sentence was inappropriate.

 Pursuant to 35 P.S. § 780–113(g), possession of a small amount of marijuana is a misdemeanor with a statutory maximum prison term of 30 days. Under the sentencing guidelines, the offense gravity score is 1. 204 Pa.Code § 303.15. The guidelines provide a standard-range sentence of restorative sanctions. 204 Pa.Code § 303.16. The aggravated range of the guidelines authorizes a prison term. *Id.* Appellant's minimum prison term of 48 hours was within the aggravated range of the guidelines.

5. In *Walls*, our Supreme Court recently set forth the legal principles governing appellate review of sentences that exceed the Sentencing Guidelines. Notably, the Supreme Court rejected this Court's suggestion that the trial court must follow the Sentencing Guidelines unless the court can articulate a compelling reason to deviate therefrom. The Court did, however, reaffirm that sentences in Pennsylvania must be tailored to the needs and circumstances of the individual defendant. A sentence based on a single, inflexible public policy would fail under any standard, including the standards articulated by our Supreme Court in *Walls*.