J-S60007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DEREK BRIAN PODVOJSKY, | |
| Appellee | No. 1793 WDA 2016 |

Appeal from the Order October 21, 2016
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0000773-2015

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 13, 2017**

The Commonwealth of Pennsylvania appeals from the October 21, 2016 order granting Appellee Derek Brian Podvojsky's suppression motion. We affirm.

The factual background and procedural history of this case are as follows. On October 13, 2014, Appellee was pulled over by a member of the Pennsylvania State Police and admitted to drinking several beers prior to operating the vehicle. Appellee was transported to a local hospital and informed, by a reading of the DL-26 form, that, if he did not consent to a blood draw, he would face increased criminal penalties. Appellee then agreed to the blood draw, which showed the presence of alcohol in his blood stream.

---

* Retired Justice specially assigned to the Superior Court

On July 20, 2015, the Commonwealth charged Appellee via criminal information with driving under the influence ("DUI")-general impairment,[1] DUI-highest rate,[2] and five summary offenses. On July 5, 2016, Appellee moved to suppress the blood draw evidence.[3] Thereafter, the trial court held a suppression hearing regarding this case and six other cases raising related legal issues. On October 21, 2016, the trial court granted the suppression motion. The Commonwealth filed this timely interlocutory appeal as of right.[4] *See* Pa.R.A.P. 311(d).

The Commonwealth presents two issues for our review:

1. Whether the [trial] court erred by suppressing evidence that was seized based upon the [trooper's] good faith reliance on appellate precedent[?]

2. Whether [Appellee's] inculpatory statements regarding his alcohol use render any potential coercion inert as [Appellee] was ready and willing to admit to his alcohol use[?]

Commonwealth's Brief at 6.

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] 75 Pa.C.S.A. § 3802(c).

[3] Appellee filed an amended motion on July 15, 2016.

[4] On November 28, 2016, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On December 19, 2016, the Commonwealth filed its concise statement. On December 22, 2016, the trial court issued an order stating that its reasoning for granting Appellee's suppression motion was included in its October 21, 2016 opinion. Both of the Commonwealth's issues were included in its concise statement.

Both of the Commonwealth's claims challenge the trial court's order suppressing the results of the blood draw. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). Our standard of review in addressing a challenge to a trial court's order granting a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *See Commonwealth v. Champney*, 161 A.3d 265, 271 (Pa. Super. 2017) (*en banc*) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "When the Commonwealth appeals from a suppression order, we . . . consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Young*, 162 A.3d 524, 527 (Pa. Super. 2017) (citation omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted).

In order to understand the issues presented in this case, it is necessary to review the change in the law which prompted Appellee to file his suppression motion. When Appellee was arrested and gave consent to the blood draw, the warnings regarding increased criminal penalties for refusing a blood draw (included in form DL-26) were legally correct. While Appellee's case was pending, however, the Supreme Court of the United States decided ***Birchfield v. North Dakota***, 136 S.Ct 2160 (2016). In ***Birchfield***, the Supreme Court of the United States considered whether a blood draw was subject to one of the limited exceptions to the Fourth Amendment's warrant requirement.

"In ***Birchfield***, the Supreme Court of the United States held that police can compel a driver to give a breath sample without a warrant; however, police cannot compel a driver to provide a blood sample without first obtaining a search warrant except in certain limited circumstances." ***Commonwealth v. Giron***, 155 A.3d 635, 637 n.1 (Pa. Super. 2017) (citation omitted). Therefore, in the wake of ***Birchfield***, the DL-26 warnings read to Appellee were partially incorrect insofar as they advised Appellee that he faced additional charges and/or enhanced penalties if he refused the blood draw. Notwithstanding the issuance of ***Birchfield***, the Commonwealth

maintains that the results of Appellee's blood test withstand suppression since the good-faith exception to the exclusionary rule applies in this case.[5]

It is well-settled that a blood draw is a search under the Fourth Amendment of the United States Constitution. **See Skinner v. Ry. Labor Execs.' Assn.**, 489 U.S. 602, 616–617 (1989); **Schmerber v. California**, 384 U.S. 757, 767–768 (1966). The fact that a blood draw is a search, however, does not end the inquiry. "As the text indicates and [the Supreme Court of the United States has] repeatedly affirmed, the ultimate touchstone of the Fourth Amendment is reasonableness." **Heien v. North Carolina**, 135 S.Ct. 530, 536 (2014) (internal quotation marks and citation omitted). For this reason, the Supreme Court of the United States has created a number of exceptions to the Fourth Amendment's warrant requirement. One such exception is if a defendant consents to a search. **See Illinois v.**

---

[5] The Commonwealth attempts to draw a distinction between the rule set forth in **Davis v. United States**, 564 U.S. 229 (2011) and **Illinois v. Krull**, 480 U.S. 340 (1987) and the good-faith exception to the exclusionary rule originally announced in **United States v. Leon**, 468 U.S. 897 (1984). Referred to as the **Davis/Krull** rule, in those two cases the Supreme Court of the United States held that when the police conduct a search in objectively reasonable reliance upon binding appellate precedent or statutory authority which is later invalidated, the exclusionary rule does not apply. **Davis**, 564 U.S. at 249-250; **Krull**, 480 U.S. at 347.

The Supreme Court of the United States made clear in both **Davis** and **Krull** that it was merely applying the good-faith exception to the exclusionary rule and not announcing a new exception to the exclusionary rule. **See Davis**, 564 U.S. at 249 (this case "comes within the good-faith exception"); **Krull**, 480 U.S. at 346 (internal citation omitted) ("We granted certiorari to consider whether [the] good-faith exception to the Fourth Amendment exclusionary rule applies" in this case.). Thus, the **Davis/Krull** rule is just a specific example of the good-faith exception.

*Rodriguez*, 497 U.S. 177, 183–186 (1990). Another such exception is a search conducted pursuant to exigent circumstances, *i.e.*, when police have insufficient time to seek a warrant because of an emergency. *See Michigan v. Tyler*, 436 U.S. 499, 509 (1978). In *Missouri v. McNeely*, 569 U.S. 141 (2013), the Supreme Court of the United States held that the exigent circumstances exception rarely applies in DUI cases. *See id.* at 149-156. Consent, on the other hand, is a factual issue.

"To effectuate the rights guaranteed under the Fourth Amendment, in the early part of the last century, the [Supreme Court of the United States] adopted the exclusionary rule, which bars the use of evidence obtained through an illegal search and seizure." *Commonwealth v. Arter*, 151 A.3d 149, 153 (Pa. 2016) (citation omitted). After approximately two decades of strict adherence to the exclusionary rule, the Supreme Court of the United States adopted the good-faith exception to the exclusionary rule.

Under the good-faith exception, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion [is not appropriate]." *Davis v. United States*, 564 U.S. 229, 238 (2011) (internal quotation marks and citations omitted). In *Davis*, the Court held that when a police officer conducts a search pursuant to binding appellate precedent, which is later overturned, the evidence seized as a result of that search is admissible

under the good-faith exception. ***Id.*** at 239-241. In ***Illinois v. Krull***, 480 U.S. 340 (1987), police conducted a warrantless administrative search pursuant to a state statute. Later, that statute was found to be unconstitutional. Nonetheless, the Supreme Court of the United States held that the good-faith exception to the exclusionary rule applied because the officer acted in an objectively reasonable manner in relying upon the subsequently invalidated statute. ***Krull***, 480 U.S. at 349-351. Therefore, evidence that is collected pursuant to a state statute that has previously been upheld by an appellate court, but which is later declared unconstitutional, is generally admissible under the good-faith exception.

The good-faith exception distinguishes the Fourth Amendment of the United States Constitution from its Pennsylvania counterpart since "it is settled that under Article I, Section 8 of the Pennsylvania [C]onstitution, a good[-]faith exception to the exclusionary rule does not exist." ***Commonwealth v. Frederick***, 124 A.3d 748, 756 (Pa. Super. 2015), *appeal denied*, 138 A.3d 2 (Pa. 2016) (citations omitted); ***Commonwealth v. Arnold***, 932 A.2d 143, 148 (Pa. Super. 2007) (citation omitted); ***Commonwealth v. Edmunds***, 586 A.2d 887, 888 (Pa. 1991). Although a concurring opinion authored by a member of this Court suggests that the good-faith exception may apply to exclusionary claims raised under Article I, Section 8 of the Pennsylvania Constitution in circumstances such as the ones present in this case, ***see Commonwealth v. Burgos***, 64 A.3d 641, 657

(Pa. Super. 2013) (Shogan, J., concurring), *appeal denied*, 77 A.3d 635 (Pa. 2013), the majority in **Burgos** explicitly rejected this statement and noted that "the good[-]faith exception does not exist [under] Pennsylvania [law]." *Id.* at 657 n.22 (citation omitted).

We have traced these distinctions between the Fourth Amendment of the United States Constitution and Article I, Section 8 because the precise legal authority Appellee cited in support of his motion has a significant impact upon the resolution of the instant appeal. In this case, Appellee moved to suppress the blood draw evidence under both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. The trial court correctly found that there is no good-faith exclusion under Article I, Section 8 of the Constitution. Therefore, the Commonwealth is not entitled to relief on its first claim of error.

In its second issue, the Commonwealth argues that Appellee's statements that he drank several beers prior to driving renders any coercion "inert." Commonwealth's Brief at 20. In other words, the Commonwealth argues that, notwithstanding the partially inaccurate DL-26 warnings, Appellee's consent was voluntary.

When a defendant is given partially inaccurate DL-26 warnings, the trial court must evaluate his or her "consent based on the totality of all the circumstances and given the partial inaccuracy of the officer's advisory."

*Evans*, 153 A.3d at 331 (internal ellipses and alterations omitted), *quoting*

*Birchfield*, 136 S.Ct. at 2186. Our Supreme Court has explained that:

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Gillespie*, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J.,

opinion announcing the judgment of the court) (internal quotation marks

omitted), *citing* *Commonwealth v. Cleckley*, 738 A.2d 427, 433 n. 7 (Pa.

1999).

The trial court carefully weighed these factors and determined that

Appellee's consent to the blood draw was not voluntary. We conclude that

this determination is supported by the record and free of legal error. The

Commonwealth focuses on the sixth factor set forth in *Gillespie*, *i.e.*,

Appellee's cooperation with law enforcement personnel. The Commonwealth

contends that Appellee's statement to police that he drank several beers

earlier in the day indicates that he was coopering with law enforcement

personnel. The Commonwealth, however, does not challenge the factual

finding by the trial court that Appellee began acting belligerently with police

after he made that statement. *See* Trial Court Opinion, 10/21/16, at 7;

N.T., 9/15/16, at 17-18. We agree with the trial court that this belligerence,

after Appellee admitted to drinking several beers, indicates that he decided

to stop cooperating with police well before he consented to the blood draw at the hospital.

The Commonwealth also doesn't challenge the trial court's conclusion that other factors weighed heavily against a finding that Appellee's consent was voluntary. He was in custody at the time police asked him to consent to the blood draw. The police used coercive tactics (albeit unknowingly) by reading the partially inaccurate DL-26 warnings. Similarly, Appellee had no knowledge of his right to refuse the blood draw as police informed him that he would be subject to increased criminal penalties if he refused. When viewed in their totality, the circumstances surrounding Appellee's consent to the blood draw indicate that the consent was involuntary. Thus, the trial court properly granted Appellee's suppression motion. As such, we affirm the trial court's order and remand for further proceedings consistent with this memorandum.[6]

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/13/2017

---

[6] The Commonwealth may still pursue the DUI-general impairment charge against Appellee.

- 10 -