J-S16037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
           :              PENNSYLVANIA
           :
        v.          :
           :
           :
           :
XAVIER CHRISTOPHER WRIGHT,   :
           :
      Appellant       :       No. 1529 MDA 2018

Appeal from the Judgment of Sentence Entered September 5, 2018
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0005578-2017

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:        **FILED: MAY 20, 2019**

Xavier Christopher Wright ("Wright") appeals from the judgment of sentence imposed following his conviction of persons not to possess firearms and altering or obliterating marks of identification.[1]  We affirm.

Pennsylvania Board of Probation and Parole Agent Matthew Fleming ("Agent Fleming") had been supervising Wright since approximately July 2017.  At some time prior to September 28, 2017, Agent Fleming received information from another parole agent that Wright was in possession of a firearm and drugs.  Agent Fleming subsequently obtained his supervisor's approval to search Wright's residence.[2]  On September 28, 2017, Wright

---

[1] 18 Pa.C.S.A. §§ 6105, 6117.

[2] At the time Agent Fleming received the tip and obtained approval to search, Wright was residing at 666 Schuylkill Street in Harrisburg, Pennsylvania. However, because Wright had told Agent Fleming that he was in the process of moving, Agent Fleming did not conduct the search until after Wright had relocated to 1611 Boas Street in Harrisburg.

reported to the parole office for his regular weekly visit. Agent Fleming detained Wright, and informed Wright that he had reason to believe that his residence contained evidence of parole violations.

Agent Fleming and other parole agents then transported Wright to his residence at 1611 Boas Street. After securing the residence, the agents brought Wright inside and conducted a search in his presence. The agents found a digital scale, as well as a handgun. Upon finding the handgun, the agents called the Harrisburg City Police for assistance. Harrisburg City Police Officer Anthony Fiore provided Wright with **Miranda**[3] warnings, after which Wright gave the police consent to search the remainder of his apartment. The police search revealed no additional contraband. Wright was subsequently arrested and charged with the above-mentioned crimes.

On April 5, 2018, Wright filed an Omnibus Pre-Trial Motion, including a Motion to suppress evidence recovered from his apartment during the search by the parole agents. Wright asserted that the search was unsupported by reasonable suspicion, and that he did not consent to the search. The suppression court conducted a hearing, after which the court directed the parties to file post-hearing briefs. The suppression court denied Wright's Omnibus Pre-Trial Motion on July 30, 2018.

Following a bench trial, Wright was convicted of persons not to possess firearms and altering or obliterating marks of identification. The trial court

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

sentenced Wright to an aggregate term of 48 to 120 months in prison, with credit for time served, plus fines and costs. Wright filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Wright now raises the following claim for our review:

Whether the [suppression] court erred in denying [Wright's] [M]otion to suppress evidence[,] where [parole] officers conducted a warrantless search of 1611 Boas Street in Harrisburg, Pennsylvania, without reasonable suspicion that a [parole] violation had taken place at said address, in violation of Article I, Section 8 of the Pennsylvania Constitution[,] and the Fourth Amendment to the United States Constitution?

Brief for Appellant at 5.

We adhere to the following standard of review:

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

***Commonwealth v. Arnold***, 932 A.2d 143, 145 (Pa. Super. 2007) (citation omitted).

Wright claims that the suppression court erred in denying his Motion to suppress, because the search of his apartment by parole agents was unsupported by reasonable suspicion. ***See*** Brief for Appellant at 12-18.

- 3 -

According to Wright, Agent Fleming received the tip that Wright possessed contraband at least 20 days prior to the search.[4] *Id.* at 16, 17. Additionally, Wright argues that the information was "outdated and stale" because Agent Fleming received the tip while Wright was still residing at 666 Schuylkill Street. *Id.* at 16. Wright asserts that because he moved to a new residence, further investigation was required to determine whether the tip was still valid. *Id.* at 17. Further, Wright claims that his alleged consent to search the residence is "immaterial," because Agent Fleming lacked reasonable suspicion to place him in custody. *Id.* at 18.

"It is well settled that in exchange for early release from prison, the parolee cedes away certain constitutional protections enjoyed by the populace in general." *Commonwealth v. Murray*, 174 A.3d 1147, 1155 (Pa. Super. 2017) (citation, quotation marks and brackets omitted); *see also* 61 Pa.C.S.A. § 6153(a) (explaining that the purpose of parole "is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public."). Thus, a parole officer is not required to obtain a warrant based on probable cause before conducting a parole search. *Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa. Super. 2018). Instead, a parole agent may conduct a property search of an offender "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the

---

[4] It is not clear from the certified record exactly when Agent Fleming received this information from the other parole agent.

conditions of supervision." 42 Pa.C.S.A. § 6153(d)(2); **see also Murray**, 174 A.3d at 1155 (explaining that reasonable suspicion is sufficient for parole searches due to the assumption that a parolee is more likely to violate the law).

"[A] search of a parolee's property will be deemed reasonable if the evidence shows that: (1) the parole officer had reasonable suspicion that the parolee committed a parole violation; and (2) the search was reasonably related to the parole officer's duty." **Murray**, 174 A.3d at 1155-56. Additionally, section 6153(d)(6) provides that "[t]he existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision[,]" and allows courts to consider, *inter alia*, "[i]nformation provided by others." 42 Pa.C.S.A. § 6153(d)(6), (d)(6)(ii). Additionally, in order to establish reasonable suspicion, a parole agent need not personally observe the appellant engage in illegal activity or suspicious conduct. **Commonwealth v. Altadonna**, 817 A.2d 1145, 1152 (Pa. Super. 2003). "[Parole agents] may rely upon information from third parties in order to form reasonable suspicion." **Id.**; **see also** 42 Pa.C.S.A. § 6153(d)(6)(ii).

In its Order denying Wright's Omnibus Pre-Trial Motion, the suppression court considered Wright's claim, and concluded that the search of Wright's residence was supported by reasonable suspicion. **See** Suppression Court Order, 7/30/18, at 2-3. Specifically, the suppression court concluded that Agent Fleming possessed reasonable suspicion to search Wright's apartment

based on the information he received from the other parole agent, Wright's indication that his previous residence had been burglarized, and the information that Wright's drugs and firearm were stolen from the first residence. ***See id.***

The suppression court's findings are supported by the evidence presented at the suppression hearing. At the suppression hearing, Agent Fleming testified that he had been supervising Wright since approximately July 2017. ***See*** N.T., 5/14/18, at 4-5. Agent Fleming testified that during a telephone conversation with another parole agent, he received information that Wright was in possession of a firearm and drugs. ***See id.*** at 5; ***see also id.*** at 11 (testifying that the parole agent received the tip from another offender). Based on the parole agent's tip, Agent Fleming spoke with his supervisor, and obtained approval to search Wright's residence. ***See id.*** at 6; ***see also id.*** at 6, 11-12 (wherein Agent Fleming stated that at the time he obtained approval for the search, Wright was residing at 666 Schuylkill Street). Agent Fleming testified that he did not immediately proceed with the search, because Wright had told Agent Fleming during a visit that he was in the process of changing residences after his room was burglarized. ***See id.*** at 12; ***see also id.*** (wherein Agent Fleming stated that a few days later, he received a call informing him that Wright's "room was burglarized and his drugs and firearm were stolen…."). Based on this information, and after conferring with his supervisor, Agent Fleming determined that "the tip was accurate and worth investigating." ***Id.***

On September 28, 2017, Wright reported to the parole office for his regularly scheduled weekly visit. ***See id.*** at 6-8; ***see also id.*** at 7 (wherein Agent Fleming explained that Wright had been given weekly reporting instructions after providing a urine sample that tested positive for PCP). Agent Fleming testified that he detained Wright when he arrived at the parole office. ***See id.*** at 7. According to Agent Fleming, he explained to Wright that he had reason to believe that Wright's residence contained evidence of parole violations, and that he would like to search the residence. ***See id.*** Agent Fleming testified that he asked Wright for permission to search the residence, and Wright freely consented. ***See id.*** at 7, 9.

Thereafter, Agent Fleming, and "at least three" other parole agents, transported Wright to his residence at 1611 Boas Street and secured the apartment. ***Id.*** at 6, 9, 10; ***see also id.*** at 14 (wherein Agent Fleming testified that he used Wright's key to enter the residence). Additionally, Agent Fleming stated that he told Wright to have a seat, and he and the other agents conducted their search in Wright's presence. ***See id.*** at 9. Agent Fleming testified that the agents found a digital scale, as well as a firearm. ***See id.*** Agent Fleming stated that he and the other agents stopped the search immediately after finding the firearm, and called the police to request assistance. ***See id.***

Upon review, we conclude that the evidence of record supports the trial court's factual findings. ***See Arnold***, 932 A.2d at 145. Agent Fleming received a tip from another parole agent that Wright was in possession of a

firearm and drugs. The parole agent had obtained this information from an offender he was supervising at the time. ***See Altadonna***, 817 A.2d at 1152 (concluding that reliance on information from parolee-informant was reasonable, despite a lack of testimony regarding his reliability, because the parolee-informant would have placed himself at risk had he given false information). Based on this information, Agent Fleming obtained his supervisor's approval to search Wright's residence. ***See*** 42 Pa.C.S.A. § 6235(d)(3) (providing that "[p]rior approval of a supervisor shall be obtained for a property search absence exigent circumstances."). Although Agent Fleming did not immediately conduct the search (instead waiting until Wright had relocated to the 1611 Boas Street residence), we do not agree with Wright's assertion that the delay rendered the information "outdated and stale," particularly in light of the information Agent Fleming later received that drugs and a firearm had been stolen from Wright's 666 Schuylkill Street residence. Thus, based on the totality of the circumstances, we discern no error in the suppression court's determination that Agent Fleming had reasonable suspicion to believe that Wright had committed a parole violation. ***See Murray***, 174 A.3d at 1155-56; ***see also Arnold***, 932 A.2d at 145. Moreover, we note that Wright consented to Agent Fleming's search of his residence, and there is no indication from the record that Wright's consent was the result of duress or coercion. ***See generally Commonwealth v. Smith***, 77 A.3d 562, 568-69 (Pa. 2013) (stating that the validity of consent to searches and seizures must be evaluated under the totality of the

circumstances to determine whether the consent was the result of a free and unconstrained choice).  Therefore, Wright is not entitled to relief on his claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/20/2019